985 So.2d 1249 (2008)
Roger LEWIS, Plaintiff-Appellee,
v.
CITY OF SHREVEPORT and Arthur Young, Defendant-Appellant.
No. 43,249-CA.
Court of Appeal of Louisiana, Second Circuit.
June 4, 2008.
*1250 Ronald F. Lattier, Curtis R. Joseph, Jr., Shreveport, for Appellant.
Frank V. Zaccaria, Jr., for Appellee.
Before WILLIAMS, STEWART and GASKINS, JJ.
WILLIAMS, J.
The defendant, City of Shreveport, appeals a judgment in favor of the plaintiff, Roger Lewis. The trial court awarded $12,000 in total damages to the plaintiff for injuries sustained in a bus accident. For the following reasons, we affirm.

FACTS
On September 22, 2003, Roger Lewis was a passenger on a public bus in Shreveport. While the bus was traveling on the Youree Drive service road the driver, Arthur Young, lost consciousness. As a result, the bus left the road and struck a steel utility pole, causing injuries to Lewis and a number of other passengers. The bus was owned and insured by the City of Shreveport ("the City"). Young was an employee of Shreveport Transit Management, Inc. ("Sportran"), which managed the City's public transportation system. He was transported to LSUHSC and received treatment for a possible heart attack and for a neck injury, which required surgery. Lewis was treated at the emergency room of Schumpert Medical Center for head and leg injuries.
Subsequently, the plaintiff, Roger Lewis, filed a petition for damages against the defendants, the City and Arthur Young. After a trial, the court found that the City was liable for plaintiff's injuries. The court concluded that because the plaintiff's injury occurred on a common carrier, the burden shifted to the City which failed to prove it was not negligent by clear and convincing evidence and the loss-of-consciousness defense did not relieve the City of liability. The court rendered judgment awarding plaintiff $12,000 in total damages. The City appeals the judgment.

DISCUSSION
In three assignments of error, the City contends the trial court erred in finding the City liable for plaintiff's injuries. The City argues it was not liable because the accident was caused by the bus driver's unforeseeable and sudden loss of consciousness.
Although a common carrier is not an insurer of its passengers' safety, the carrier is required to exercise the highest degree of care and is liable for the slightest negligence. Dupree v. Louisiana Transit Management, Inc., 441 So.2d 436 (La.App. 2d Cir.1983), writ denied, 445 So.2d 1233 (La.1984). The mere showing of injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence. Where there is proof of injury to a passenger, the burden shifts to the defendant carrier to show that it is free from negligence. Galland v. New Orleans Public Service, Inc., 377 So.2d 84 (La.1979); Dupree, supra.
When a prima facie case of negligence against the common carrier is established, the defendant has the burden to exculpate itself by proving that it exercised the highest degree of diligence, care and precaution for the safety of its passengers. Dupree, supra. The defendant has the burden of proving by clear and convincing evidence an affirmative defense such as sudden unforeseeable loss of consciousness. Cash v. McGregor, 31,537 (La. App.2d Cir.2/24/99), 730 So.2d 497, writ denied, 99-1117 (La.6/4/99), 744 So.2d 628. The carrier must do all that human sagacity and foresight can accomplish under the *1251 circumstances in view of the character and mode of conveyance to prevent injury to passengers. There is a heavy presumption of negligence accompanying a carrier's duty of care toward its passengers. Dupree, supra.
A trial court's factual findings will not be reversed unless clearly wrong. A reviewing court does not decide whether the factfinder was correct, but whether its findings were reasonable based upon the record as a whole. Stobart v. State DOTD, 617 So.2d 880 (La.1993).
Initially, we note that contrary to the City's assertions in its brief, the plaintiff presented prima facie evidence of the City's negligence by showing that plaintiff was a fare-paying passenger who was injured and did not reach his destination safely. Therefore, the burden shifted to the City to exculpate itself by proving that it exercised the highest degree of diligence and care for the safety of its passengers. The City argues that Young's sudden loss of consciousness was not foreseeable because it never received notice that Young's physical condition could cause him to lose consciousness. The record does not support the City's argument.
Dr. Raymond Dennie, an occupational medicine expert, testified at trial that he was experienced in performing physical examinations of individuals to determine their ability to drive a common carrier under U.S. Department of Transportation (DOT) regulations. Dr. Dennie explained that these federal regulations required commercial drivers to be certified as physically able to safely perform their job duties. Dr. Dennie stated that in October 2002, he examined Young and found him unfit for occupational driving because Young failed to meet the DOT blood sugar criteria. Dr. Dennie testified that he informed Young that he was a diabetic who needed treatment to reduce his blood sugar to an acceptable level before being certified.
The evidence presented demonstrates that Young and his employer were aware of Young's previous health problems, including his coronary bypass surgery and his high blood pressure. Young's DOT certification as a commercial driver had already been limited to a period of one year, rather than the two-year maximum, due to his heart disease. Additionally, Young and his employer were specifically placed on notice of Young's diabetic condition in October 2002, when Dr. Dennie could not certify Young to drive a bus because of his abnormal blood sugar levels. Subsequently, Young was diagnosed with Type II diabetes mellitus. The federal regulations governing common carriers recognize diabetes mellitus as "a disease which, on occasion, can result in a loss of consciousness or disorientation in time and space." 49 CFR 391.41(b)(3). Thus, the record shows that Young and his employer knew or should have known of the risk, expressly stated in the federal regulations, that Young could lose consciousness while driving if he failed to monitor and control his diabetes. Consequently, the City's assertion that neither Young nor his employer had knowledge that he might lose consciousness while driving lacks merit.
The City also argues that Young's loss of consciousness was not foreseeable based on the medical testimony and his certification as a commercial driver. Dr. Revender Goel, a family practice physician, testified that he examined Young in November 2002 for DOT certification as a bus driver. Dr. Goel stated that he reviewed Young's medical history and was aware of Young's diabetes and prior heart bypass surgery. Dr. Goel testified that he certified Young to drive for one year, the maximum period for a person with his history of heart disease, without reviewing any *1252 reports from Young's cardiologist. In his examination report, Dr. Goel noted that Young needed to have his urine rechecked within one month to monitor the protein levels. Dr. Goel stated that he did not know whether Young had complied with this instruction because he was supposed to "follow up with his regular physician." Dr. Goel testified that based on the November 2002 examination, he did not have reason to believe that Young might lose consciousness while driving. However, Dr. Goel acknowledged that he did not know whether Young's diabetes had become worse by the time of the accident. Dr. Goel opined that Young should have been examined within three months of his physical exam by his treating physician to evaluate the status of his diabetes and that Young should have been checking his blood sugar level every day.
Although Dr. Goel certified Young to drive commercially for one year, the doctor expressly ordered Young to have his urine tested within one month of his examination. In addition, Dr. Goel noted in his report that Young met the DOT standards, but would require "periodic evaluation" for his diabetes mellitus and hypertension. A reading of Dr. Goel's testimony indicates that his opinion of whether Young's loss of consciousness was foreseeable was based on the assumption that Young would follow these explicit instructions.
However, the record does not contain any evidence that Young followed Dr. Goel's instructions by having his urine tested or by seeing a physician for periodic evaluations to monitor his diabetes. The City produced no records to reflect that Young visited a doctor during the ten-month period from his certification physical in November 2002 until the accident occurred in September 2003. Nor was there a showing that Young regularly checked his blood sugar. As previously stated, the City bore the burden of proving that the common carrier exercised the highest degree of diligence and care to protect the safety of its passengers. At a minimum, this standard required the City to demonstrate that Young and his employer took the actions necessary to monitor his diabetes and other health problems. This the City has failed to do.
Given the serious nature of Young's health problems, the trial court could reasonably have found that Young and his employer were negligent in failing to follow the physician's instructions to obtain further testing and evaluations which could have indicated whether or not Young's diabetes was becoming worse over time. After reviewing the entire record, we cannot say the trial court was clearly wrong in finding that the City failed to produce sufficient evidence to exculpate itself from the heavy presumption of negligence applicable under the circumstances of this case. Thus, the assignments of error lack merit.

Interpretation of Law Regarding Common Carriers
In its remaining assignment of error, the City contends the trial court erred in applying the loss of consciousness defense to common carriers. The City argues that the trial court's reasons for judgment suggest that the court incorrectly found the City strictly liable for the plaintiff's injuries.
We note that an appeal is taken from an adverse judgment, not from the opinion of the court. The trial court's reasons for judgment, while explaining the principles considered by the court in deciding a case, are not a part of the signed judgment being appealed. Alvarez v. Clasen, 06-304 (La.App. 5th Cir.10/31/06), 946 So.2d 181.
As stated above, the record supports the trial court's judgment. In its oral reasons *1253 for judgment, the trial court correctly noted that plaintiff's injury on a common carrier shifted the burden to the defendant to exculpate itself from negligence. The court found that the City failed to present sufficient evidence to show that it could not have known about the risk related to the bus driver's health problems. Although the court indicated it was unable to find other cases involving a common carrier with a driver who lost consciousness, we do not agree that the trial court's reasons for judgment reflect that the court either held the City strictly liable or determined that the loss of consciousness defense was not applicable to common carriers. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellant, City of Shreveport, to the extent allowed by law.
AFFIRMED.