# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-281


BERNADETTE WILLIAMS

VERSUS

LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20026390
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Phyllis M. Keaty, Judges.

AFFIRMED.

Rickey W. Miniex
Clyde R. Simien
Todd M. Swartzendruber
Erica R. Mayon
Simien & Miniex
Post Office Box 81918
Lafayette, LA 70598
(337) 269-0222
COUNSEL FOR DEFENDANT/APPELLEE:
    Lafayette City-Parish Consolidated Government

Harry K. Burdette
The Glenn Armentor Law Corporation
300 Stewart Street
Lafayette, LA 70501
(337) 233-1471
COUNSEL FOR PLAINTIFF/APPELLANT:
    Bernadette Williams

AMY, Judge.

After the plaintiff fell on a public bus, she filed suit against the city-parish government, alleging that she fell as a result of the bus driver's negligence and that she injured her knees as a result of the fall. After a trial, the trial court entered judgment in favor of the defendant, finding it rebutted any presumption of negligence that arose under the common carrier law. The plaintiff appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiff, Bernadette Williams, alleges that on December 12, 2001, she was a passenger on a bus owned and operated by the defendant, Lafayette City-Parish Consolidated Government. According to Ms. Williams, after she and her children boarded the bus, she paid their fares and began to walk to her seat. Ms. Williams alleges that, before she got to her seat, the bus driver, Jude Duhon, "took off" with a "jerk," causing her to fall to her knees. She also alleges that Mr. Duhon did not stop or submit an accident report after she told him that she hurt herself.

According to the record, Ms. Williams first sought treatment for her knees approximately two weeks after the accident. Ms. Williams was eventually referred to an orthopedic surgeon, Dr. Harold Granger, who diagnosed her with bilateral knee contusions and bilateral patellofemoral chondromalacia. Dr. Granger performed two surgeries on Ms. Williams' right knee. Dr. Granger indicated that in the first surgery he repaired a torn meniscus and smoothed out cartilage and in the other he inserted a "UniSpacer" device in an attempt to relieve some of Ms. Williams' pain. Ms. Williams eventually had two total knee replacements. Although Dr. Granger testified at his deposition that Ms. Williams' knee condition was a degenerative or arthritic condition that likely pre-existed her fall, he contemplated that the fall caused an asymptomatic condition to become

symptomatic. Dr. Granger attributed Ms. Williams' first two knee surgeries to the fall, but did not attribute her subsequent total knee replacement surgeries to the fall.

At trial, the defendant contested both Ms. Williams' version of the accident and whether the fall was the cause of her knee condition. Mr. Duhon, the bus driver, testified that the bus was not moving when the plaintiff "went down on one knee." He further testified that the plaintiff did not tell him that she was injured and that she said was "okay" when she got off the bus. Mr. Duhon also testified that, even if the bus was moving when the plaintiff fell, the mechanics of the bus prevented it from "jerking" as it began to move. Further, Mr. Duhon noted that there were overhead handholds in the area where Ms. Williams fell. Ms. Williams testified that she had never tried to reach the overhead handholds.

Further, the defendant argued that Ms. Williams' knee condition was not caused by the fall. Although Ms. Williams testified that prior to the accident she had "never" had pain in her knees, the defendant introduced medical records from 1999 and 2000 indicating that Ms. Williams sought treatment for knee pain and her "legs going out on her." Dr. Douglas Bernard, an orthopedic surgeon, performed an examination on Ms. Williams in 2009 at the defendant's request. At his deposition, Dr. Bernard also testified that chondromalacia was an arthritic or degenerative condition. However, Dr. Bernard suspected that the fall only caused Ms. Williams' bilateral knee contusions, noting that Ms. Williams' MRI and x-rays did not reveal an acute injury. Further, Dr. Bernard rejected the plaintiff's contention that the fall accelerated her arthritic condition, although he conceded that he had seen cases where trauma had caused an asymptomatic condition to become symptomatic.

At the close of evidence, the trial court took the matter under advisement and requested that the parties submit post-trial briefs on the issues of common carrier liability and the appropriate burden of proof. Thereafter, the trial court issued judgment in favor of the defendant, finding that the defendant successfully rebutted any presumption of negligence. The plaintiff appeals, asserting that:

I.      The trial court committed manifest error and was clearly wrong in finding that the Lafayette City-Parish Consolidated Government was not liable for Ms. Bernadette Williams['] injuries.

II.     The trial court committed manifest error and was clearly wrong in its application of the Common Carrier law to the facts of this case and the trial court[']s own admissions at the conclusion of trial.

III.    The trial court committed manifest error and was clearly wrong in its review and interpretation of Jude Duhon's personnel file containing four accidents and three reprimands while driving a city bus for the Lafayette City-Parish Consolidated Government.

IV.     The trial court committed manifest error and abused its discretion by excluding the testimony of Joseph Martin and limiting the testimony of Andrea Edwards Williams.

**Discussion**

*Evidentiary Issues*

In her fourth assignment of error, the plaintiff contends that the trial court erred in excluding the testimony of Joseph Martin and limiting the testimony of Andrea Edwards Williams. We address this preliminary issue before turning to the trial court's judgment.

According to her witness list, Ms. Williams intended to call Mr. Martin, Mr. Duhon's former supervisor, to testify about Mr. Duhon's driving habits and the defendant's training procedures, if any. The defendant filed a motion *in limine* seeking to exclude the testimony. The trial court found that the proposed testimony was irrelevant and that any evidence regarding Mr. Duhon's driving

3

habits would only be admissible for the purposes of impeachment. The plaintiff also called Ms. Andrea Edwards Williams, another city-parish bus driver, to testify that the plaintiff reported the fall to her immediately after the accident. The trial court sustained objections to her testimony regarding the defendant's policy for reporting incidents on buses and her own driving habits.

"When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence." La.Code Civ.P. art. 1636(A). A panel of this court further addressed appellate review of inadmissible evidence in *Whitehead v. Kansas City Southern Railway Co.*, 99-896 (La.App. 3 Cir. 12/22/99), 758 So.2d 211, *writ denied*, 00-209 (La. 4/7/00), 759 So.2d 767. The court stated:

> However, if a party fails to proffer excluded evidence, an appellate court cannot analyze it and its admissibility, and that party is precluded from complaining of the excluded testimony. *Broussard v. Olin Corp.*, 546 So.2d 1301 (La.App. 3 Cir. 1989). Additionally, the trial court has vast discretion in deciding the admissibility of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion. *O'Neill v. Thibodeaux*, 97-1065 (La.App. 3 Cir. 3/6/98), 709 So.2d 962.

*Id.* at 218-19.

Mr. Martin's Excluded Testimony

The plaintiff did not proffer Mr. Martin's excluded testimony. However, the plaintiff's attorney addressed the trial court concerning the topics of Mr. Martin's expected testimony, stating:

> Your Honor, this witness was the assistant supervisor of Mr. Jude Duhon. He traveled in the buses. He is familiar with the buses and how they operate and whether they take off smoothly as Mr. Duhon testified to or how they take off in the different buses and so forth.

4

So, basically, he's being called on rebuttal to rebut Mr. Duhon's testimony regarding how the buses operate. We're not asking for opinion testimony, just his facts on what his knowledge is of those buses, because he operated those buses, and he's the one who trained how to drive the buses. So he's familiar with those buses and whether or not they smoothly operate or if they can take – you know, just how they operate.

The plaintiff, in brief, further contends that Mr. Martin would have testified regarding the operation and mechanics of the type of bus that Mr. Duhon was driving and whether drivers should wait until all passengers are sitting down before proceeding.

On at least two occasions, our courts have found that an attorney's statement as to what a witness would say does not meet the requirements of La.Code Civ.P. art. 1636, insofar as it calls for "a statement setting forth the nature of the evidence." *See Holt v. Bethany Land Co.*, 36,888 (La.App. 2 Cir. 4/9/03), 843 So.2d 606; *McHale v. Schwegmann Bros. Giant Super Mkts., Inc.*, 97-788 (La.App. 5 Cir. 11/23/98), 722 So.2d 328. We note, however, that the failure to proffer excluded testimony or evidence may be excused if there is sufficient other evidence in the record to make the content of the excluded testimony abundantly clear from the face of the record. *See Taylor v. Tommie's Gaming*, 38,568 (La.App. 2 Cir. 6/25/04), 878 So.2d 853, *rev'd on other grounds*, 04-2254 (La. 5/24/05), 902 So.2d 380; *Gulf Outlet Marina, Inc. v. Spain*, 02-1589 (La.App. 4 Cir. 6/25/03), 854 So.2d 386, *writ denied*, 03-2075 (La. 11/7/03), 857 So.2d 497.

We find that, under these facts, the attorney's statements to the trial court concerning the topic of Mr. Martin's testimony do not make the factual content of that testimony abundantly clear such that it would permit review on appeal. Instead, while the plaintiff's attorney generally disclosed the topics that Mr. Martin's testimony would address, the factual statements and/or conclusions to

5

which he would have testified are not apparent from the record. As Mr. Martin's excluded testimony was not preserved for review, the plaintiff is precluded from complaining about it on appeal. Therefore, we do not address the plaintiff's argument regarding Mr. Martin's testimony.

Ms. Andrea Edward Williams' Excluded Testimony

With regards to Ms. Andrea Edwards Williams, the trial court sustained two of the defendant's objections to her testimony. The first, regarding the defendant's policies for reporting accidents, was sustained on the basis that, unless Ms. Andrea Edwards Williams was a policy-maker, she only had personal knowledge of what was required of her. The second, regarding whether she waited for passengers to be seated before starting the bus, was sustained on the basis of relevance.

The trial court has vast discretion regarding the admissibility of evidence and its determination will not be reversed absent an abuse of discretion. *Whitehead*, 758 So.2d 211. "[R]elevant evidence is admissible except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible." La.Code Evid. art. 402. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. art. 401. However, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403. Further, a lay witness may not testify regarding matters outside of his or her personal knowledge. La.Code Evid. art. 602.

6

With regard to the policy for reporting accidents, although the plaintiff did not proffer the excluded testimony, the content of the testimony is "abundantly clear" from the face of the record. *See Taylor*, 878 So.2d 853; *Spain*, 854 So.2d 386. Andrea Edwards Williams testified that, at least in her case, she had to "radio it in, and they would get risk management out." Accordingly, we are able to review this aspect of the excluded evidence.

The trial court sustained the objection regarding the policy for reporting accidents on the basis that, unless she was a policy-maker, Andrea Edwards Williams did not have personal knowledge of the policies. Andrea Edwards Williams testified that she "had to radio it in" if someone fell on one of her buses, but that she had no idea whether Mr. Duhon had done so. In light of the witness' lack of personal knowledge in this regard, we find no error in the trial court's determination excluding the witness' testimony regarding the policies of the defendant with regard to reporting accidents. *See* La.Code Evid. art. 602.

However, we do not review the second instance in which the trial court sustained an objection to Andrea Edward Williams' testimony. In that instance, the plaintiff's attorney asked whether Andrea Edwards Williams "wait[ed] until a passenger sits down before taking off on a bus?" In this case, the objection was lodged before the witness had the opportunity to respond.[1] Here, although we know the topic to which the witness would have testified, it is not "abundantly clear" from the record what factual statements and/or conclusions she would have made.[2] *See Taylor*, 878 So.2d 853; *Spain*, 854 So.2d 386. Further, even if the trial

---

[1] The record indicates that the trial court considered Ms. Andrea Edwards Williams' driving habits irrelevant to the driving habits of Mr. Duhon.

[2] We note that, although the plaintiff contends that Mr. Duhon should have waited until she was seated before he began to accelerate, the plaintiff conceded that "he usually wait[s] until we sit down, you know, some of the bus drivers, not all of them . . . ."

court had allowed the testimony, it was entitled to give it no weight as the finder of fact. *See Spain*, 854 So.2d 386.

This assignment of error is without merit.

*Factual Findings*

The remainder of Ms. Williams' assignments of error address the factual findings of the trial court.

The trial court's findings of fact are reviewed using the manifest error/clearly wrong standard of review set out in *Rosell v. ESCO*, 549 So.2d 840 (La.1989). After reviewing the record in its entirety, an appellate court cannot overturn a reasonable finding of fact even if it would have weighed the evidence differently. *State ex rel. B.A.*, 10-896 (La.App. 4 Cir. 12/15/10), 54 So.3d 186. Even where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. *Givens v. Givens*, 10-0680 (La.App. 1 Cir. 12/22/10), 53 So.3d 720, citing *Stobart v. State, DOTD*, 617 So.2d 880 (La.1993). Therefore, when the fact finder is presented with two permissible views of the evidence, the fact finder's determination cannot be manifestly erroneous or clearly wrong. *Id.* However, even where a factual finding is purportedly based on a finding of credibility, the appellate court can determine that the finder of fact was manifestly erroneous or clearly wrong "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story." *Rosell*, 549 So.2d at 844-45.

Ms. Williams asserts that her injuries occurred as a result of a fall on a public bus. The owner and operator of a public bus is considered a common carrier, and owes a heightened standard of care to the passengers he or she

8

undertakes to transport. *Lewis v. City of Shreveport*, 43,249 (La.App. 2 Cir. 6/4/08), 985 So.2d 1249, *writ denied*, 08-1477 (La. 10/3/08), 992 So.2d 1018; *Amos v. St. Martin Parish Sch. Bd.*, 00-808 (La.App. 3 Cir. 12/6/00), 773 So.2d 300. The second circuit discussed the heightened standard of care under the common carrier doctrine in *Lewis*, 985 So.2d at 1250-51, stating:

> Although a common carrier is not an insurer of its passengers' safety, the carrier is required to exercise the highest degree of care and is liable for the slightest negligence. *Dupree v. Louisiana Transit [Mgmt.], Inc.*, 441 So.2d 436 (La.App. 2 Cir. 1983), *writ denied*, 445 So.2d 1233 (La.1984). The mere showing of injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence. Where there is proof of injury to a passenger, the burden shifts to the defendant carrier to show that it is free from negligence. *Galland v. New Orleans [Pub. Serv.], Inc.*, 377 So.2d 84 (La.1979); *Dupree, supra*.

> When a prima facie case of negligence against the common carrier is established, the defendant has the burden to exculpate itself by proving that it exercised the highest degree of diligence, care and precaution for the safety of its passengers. *Dupree, supra*. The defendant has the burden of proving by clear and convincing evidence an affirmative defense such as sudden unforeseeable loss of consciousness. *Cash v. McGregor*, 31,537 (La.App. 2 Cir. 2/24/99), 730 So.2d 497, *writ denied*, 99-1117 (La. 6/4/99), 744 So.2d 628. The carrier must do all that human sagacity and foresight can accomplish under the circumstances in view of the character and mode of conveyance to prevent injury to passengers. There is a heavy presumption of negligence accompanying a carrier's duty of care toward its passengers. *Dupree, supra*.

Relying on *Craighead v. Preferred Mutual Risk Insurance Co.*, 33,731 (La.App. 2 Cir. 8/25/00), 769 So.2d 112, *writ denied*, 00-2946 (La. 12/15/00), 777 So.2d 1230, Ms. Williams argues that it was error for the trial court to base its determination of non-liability on whether or not the bus was moving. Ms. Williams also contends that the trial court erred in crediting Mr. Duhon's testimony that the bus was not moving and, if it was, that it did not "jerk" when it began to move. Further, Ms. Williams contends that the trial court erred in finding

that Mr. Duhon's personnel record contained only one accident and no reprimands, arguing that the personnel record indicates that Mr. Duhon had multiple accidents and reprimands. Finally, at the close of evidence, the trial court requested that the parties file post-trial briefs, and especially requested that the parties address "[W]hat should [the trial court] do in the event of a tie?" Ms. Williams argues that this statement indicates that the trial court incorrectly applied the burden prescribed by the common carrier doctrine.

The trial court issued lengthy reasons for judgment, and ultimately, although finding that Ms. Williams had made a prima facie case that she was a fare-paying passenger on a common carrier and that an incident occurred on the bus that caused her injury, found that the defendant successfully rebutted the presumption of negligence. In reaching that finding, the trial court quoted both Ms. Williams' and Mr. Duhon's testimony regarding their versions of the accident. The trial court noted that Mr. Duhon did not have an interest in the outcome of this case, that he was able to testify regarding the mechanical inability of the bus to "jerk" as it began to move, and that there were railings that the plaintiff testified that she did not use. With regard to Mr. Duhon's personnel file, the trial court stated:

> During the trial, there was an attack on [Mr. Duhon's] credibility regarding alleged 'reprimands' in his personnel file he failed to disclose during his deposition. The court has reviewed the evidence in this case thoroughly and has found the alleged reprimands not to be reprimands at all, but rather normal reports on performance. The first two were entitled 'Report on Probationer', these were filled out at the start of the bus driver's employment in increments of three months. The last was entitled 'Performance Evaluation' for the period of the first year the bus driver was employed. All three returned satisfactory performance and the last even returned some outstanding marks. All indicated the bus driver was doing a good job and to continue to keep up the good work despite one accident during his employment as a driver. He was recommended for a promotion shortly after the incident. He was accepted and held that position until he retired from the Lafayette City employ as a safety officer.

The common carrier doctrine requires that, in order to establish a prima facie case of negligence, the plaintiff must establish that she was a fare-paying passenger on a public conveyance and that she failed to reach her destination safely. *Lewis*, 985 So.2d 1249. Despite Ms. Williams' contention to the contrary, we note that there is no requirement that a bus driver wait until all passengers reach their seats before moving, unless something about the appearance of the passenger makes it apparent that he or she is old, infirm, or otherwise physically incapacitated, or is unusually laden with packages. *Covington v. La. Transit Co.*, 07-827 (La.App. 5 Cir. 2/6/08), 980 So.2d 11.

A review of the record indicates that the plaintiff testified that she boarded Mr. Duhon's bus and paid her fare before she began walking to her seat. According to the plaintiff's testimony, she fell to her knees when the bus "took off" with a "jerk." Ms. Williams' two children also testified that the bus took off with a "jerk." Further, although Dr. Granger contemplated that the fall accelerated the progression of Ms. Williams' arthritic condition and contributed to her first two knee surgeries, both Dr. Granger and Dr. Bernard agreed that, at a minimum, the fall caused Ms. Williams' bilateral knee contusions. Additionally, despite the defendant's contention that Ms. Williams' knee pain was the result of a pre-existing degenerative condition, Dr. Bernard conceded that trauma could cause an asymptomatic degenerative condition to become symptomatic. Based on this evidence, we find no error in the trial court's conclusion that Ms. Williams established a prima facie case under the common carrier doctrine.

With regard to Ms. Williams' contention that the trial court erred in finding that the defendant successfully rebutted the presumption of negligence, the record reveals that Ms. Williams' version of the accident was contradicted by the

11

testimony of Mr. Duhon. Mr. Duhon testified that the bus was not moving when Ms. Williams "went down on one knee like you genuflect." Further, Mr. Duhon testified that even if the bus was moving, its automatic transmission and weight would prevent it from "jerking" when it began to move. Additionally, although the plaintiff had previously denied that she had any preexisting knee problems or knee pain, medical records introduced into evidence indicated that the plaintiff sought treatment for knee pain and had problems with her "legs going out" as early as 1999. The plaintiff testified that she attributed her prior falls to anemia and that she had not disclosed them because she never hurt herself before.

In his testimony, Mr. Duhon denied that he had received any reprimands or been involved in any "incidents;" Ms. Williams contends that the contents of Mr. Duhon's personnel record contradict Mr. Duhon's testimony. Ms. Williams therefore contends that the trial court mischaracterized Mr. Duhon's personnel record. However, the appellate record supports the trial court's interpretation of the personnel record. Mr. Duhon's personnel record contains several evaluations, two made during his probationary period and one annual evaluation. All of the evaluations indicate that Mr. Duhon's performance was either "satisfactory," "very good," or "outstanding." Although Mr. Duhon was apparently involved in several accidents, the records indicate that only one was "preventable." Additionally, a review of Mr. Duhon's testimony supports the trial court's conclusion that Mr. Duhon differentiated between "incidents" and "reprimands" as opposed to "accidents" or constructive criticism.

Further, we do not find the trial court's request that post-trial briefs should address "what should [the trial court] do in the event of a tie?" at the close of evidence to suggest that the trial court applied an incorrect burden under the

12

common carrier doctrine. A review of the record indicates that the trial court recognized that the testimony in this case created two mutually exclusive versions regarding how Ms. Williams fell. The trial court indicated that it intended to review the evidence submitted at trial and requested additional argument by the parties about the burden of proof under the common carrier doctrine. The record does not indicate that the trial court actually found that evidence presented resulted in a "tie."

Because the evidence in this case established two mutually exclusive versions of the accident, the trial court's factual findings were necessarily based on a finding of credibility. *See State ex rel. B.A.*, 52 So.3d 186. Based on our review of the record, the trial court clearly credited Mr. Duhon's testimony regarding the accident. We do not find Mr. Duhon's testimony to be "so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story." *Rosell*, 549 So.2d at 845. Mr. Duhon's testimony was further supported by Ms. Williams' medical records indicating that her legs had been "going out" prior to the accident and that she had a history of previous falls that she attributed to her anemia. Therefore, the trial court did not err in finding that the defendant successfully rebutted the presumption of negligence.

Ms. Williams' remaining assignments of error are without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed against the plaintiff, Bernadette Williams.

**AFFIRMED.**