# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 19-69

**LISA SMITH-ASEKOMEH**

**VERSUS**

**LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20155290
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

**REVERSED AND REMANDED.**

**Robert A. Mahtook, Jr.**
**Kay Theunissen**
**Julie I. Faulk**
**Mahtook & LaFleur, L.L.C.**
**P. O. Box 3089**
**Lafayette, LA 70502-3089**
**(337) 266-2189**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Lafayette City-Parish Consolidated Government**

**John Jefcoat**
**Holly Lamarche**
**Galloway Jefcoat, L.L.P.**
**P. O. Box 61550**
**Lafayette, LA 70596-1550**
**(337) 984-8020**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Lisa Smith-Asekomeh**

**EZELL, Judge.**

Lisa Smith-Asekomeh appeals a trial court judgment granting summary judgment in favor of the Lafayette City-Parish Consolidated Government (LCG). She claims that summary judgment should be reversed because there are questions of material fact concerning the fault of Jackie Green, a bus driver for the Lafayette Transit System. For the following reasons, we reverse the judgment of the trial court.

## FACTS

On April 18, 2015, Ms. Smith-Asekomeh was a passenger on an LCG bus. Jackie Green was driving the bus on Lafayette Transit System Route #50. She had recently been hired by LCG as a driver so her supervisor, Jason Ledet, was on board the bus to train her. Mr. Ledet explained that they were in the process of route training Ms. Green. She initially trained without passengers, but on April 18 there were passengers on the bus.

Mr. Ledet explained that Route #50 starts at the bus terminal. One of the stops is in the Walmart parking lot located on Buchanan Street. Ms. Smith-Asekomeh traveled on the bus to go to Walmart the afternoon of the incident at issue. She did some shopping at Walmart. After Ms. Smith-Asekomeh finished shopping, she got back on the same bus with several grocery bags. Ms. Smith-Asekomeh took the first forward facing seat behind the driver. There were two seats in front of her facing the aisle that could be flipped up to allow for handicap seating. Mr. Ledet was standing on the yellow line in the aisle in the front near the driver holding the post.

After the bus left Walmart, it made a right on Pierce Street. From Pierce Street, the bus would take a left onto Willow Street, which is where the incident

took place.  Ms. Smith-Asekomeh could not see what was happening because Mr. Ledet was standing in aisle, and the bus driver was seated in front of her.  Mr. Ledet testified that they were at the red light in the left lane to turn left onto Willow.  The turn lane does not have a green arrow light.  When the light turned green, the bus proceeded to take a left.  Ms. Green had to put on her brakes to avoid a collision with a car coming from the opposite direction.  Ms. Smith-Asekomeh testified she flew forward, her arm hit the armrest on the chair in front of her, and then she slammed back into her seat.

Ms. Smith-Asekomeh never reported to Ms. Green or Mr. Ledet that she was hurt.  The bus continued its route.  After she got off the bus, Ms. Smith-Asekomeh dropped her bags off at her house and then walked to her mother's house.  Her mother called an ambulance.  When the ambulance arrived, Ms. Smith-Asekomeh walked to it and got into the ambulance.  Her mother rode with her to the emergency room.  Ms. Smith-Asekomeh testified that she was in great pain the next day.

Ms. Smith-Asekomeh filed suit against the LCG on October 26, 2015.  On February 27, 2018, the LCG filed a motion for summary judgment.  A hearing on the motion was held on October 29, 2018.  The trial court granted the motion for summary judgment and dismissed Ms. Smith-Asekomeh's petition on November 8, 2018.  Ms. Smith-Asekomeh then filed the present appeal.

## SUMMARY JUDGMENT

Ms. Smith-Asekomeh claims the trial court erred in granting the LCG's motion for summary judgment.  She argues that there are genuine issues of material fact regarding Ms. Green's fault in performing a left-hand turn.

2

The summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). Appellate courts review the grant or denial of a motion for summary judgment de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, p. 4 (La. 2/26/08), 977 So.2d 880, 882-83; La.Code Civ.P. art. 966(A)(3).

The moving party has the burden of proof unless the mover "will not bear the burden of proof at trial on the issues that is before the court on the motion for summary judgment." La.Code Civ.P. art. 966(D)(1). In that case, the mover need only "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

"The owner and operator of a public bus is considered a common carrier, and owes a heightened standard of care to the passengers he or she undertakes to transport." *Williams v. Lafayette City-Parish Consol. Gov't.*, 11-281, pp. 8-9 (La.App. 3 Cir. 10/5/11), 72 So.3d 1023, 1030, *writ denied*, 11-2473 (La. 2/3/12), 79 So.3d 1027 (citing *Lewis v. City of Shreveport*, 43,249 (La.App. 2 Cir. 6/4/08), 985 So.2d 1249, *writ denied*, 08–1477 (La. 10/3/08), 992 So.2d 1018 and *Amos v. St. Martin Parish Sch. Bd.*, 00–808 (La.App. 3 Cir. 12/6/00), 773 So.2d 300). "Although a common carrier is not an insurer of its passengers' safety, the carrier is required to exercise the highest degree of care and is liable for the slightest

3

negligence." *Id*. (quoting *Lewis v. City of Shreveport*, 43,249, p. 2 (La.App. 2 Cir. 6/4/08), 985 So.2d 1249, 1250, *writ denied*, 08-1477 (La. 10/3/08), 992 So.2d 1018).

The trial court found that the testimony introduced in support of the motion for summary judgment established that Ms. Green stopped in response to a sudden emergency produced by the actions of an oncoming vehicle. The trial court also concluded that Ms. Green did not make a left turn in violation of La.R.S. 32:101.

Louisiana Revised Statutes 32:101(A)(2) provides:

> **Left turns on two-way roadways.** At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

"No person shall turn a vehicle at an intersection . . . until such movement can be made with reasonable safety." La.R.S. 32:104(A). Louisiana Revised Statutes 32:122 further provides that: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard."

> A left turn is generally a dangerous maneuver which must not be undertaken until the turning motorist ascertains that the turn can be made in safety. *Agency Rent-A-Car, Inc. v. Hamm*, 401 So.2d 1259 (La. App. 1 Cir. 1981). A left-turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show that he is free of negligence.

4

*Rabon v. Smithkors*, 17-502, p. 6 (La.App. 3 Cir. 1/18/18), 238 So.3d 1013, 1017, *writ denied*, 18-294 (La. 4/27/18), 241 So.3d 310 (quoting *Thomas v. Champion Ins. Co.*, 603 So.2d 765, 767 (La.App. 3 Cir. 1992)).

Ms. Green testified that the bus was at the traffic light on Pierce waiting for it to change to green so she could make a left turn onto Willow. The intersection did not have a green arrow. There was a car "opposite of mine, it was at the light, too. So, I was giving him the right-of-way first to go before I turned." The light changed from red to green, and she began to enter the intersection. Explaining, Ms. Green stated, "I was going to make my turn, but I let him . . . [g]o across first, but when I went, he went." She proceeded to make the turn, but the car on opposite side swerved his car at her. This is when she applied her brakes and let him proceed.

Mr. Ledet knew the bus was stopped at the intersection before turning left, but could not recall if the light was red or green. Mr. Ledet saw the car approaching before the bus entered the intersection. He testified that he was shocked the vehicle was coming so fast. This is when he indicated to Ms. Green to stop the bus.

The LCG argues that it is absolved of liability because Ms. Green was faced with a sudden emergency and had to avoid a collision with the vehicle in the oncoming lanes that was speeding and swerved into her lane.

> [T]he sudden emergency doctrine is available to a person who finds himself in a position of imminent peril and does not have sufficient time to consider and weigh all of the best means available to avoid that impending danger; such a person is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence.

5

*Stelly v. Nat. Union Fire Ins. Co.*, 18-293, p. 10 (La.App. 3 Cir. 2/6/19), 266 So.3d 395, 403.

Based on the testimonies of both Ms. Green and Mr. Ledet, we find that there are genuine issues of material fact. Ms. Green testified that both the bus and the car were stopped at the red light, yet Mr. Ledet testified that the car was approaching fast. Ms. Green testifies that she was going to let the other car pass, as she is required by law to do, yet she started her approach in to the intersection.

Utilizing a de novo standard of review, we find that there are genuine issues of material fact, and the LCG was not entitled to summary judgment regarding the fault of Ms. Green in making a left-hand turn. We reverse the grant of summary judgment in favor of the LCG and remand this case for further proceedings. Costs of this appeal are assessed to the LCG.

**REVERSED AND REMANDED.**