# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-161

TERESA JEFFRIES

VERSUS

PRIME INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2017-5215
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, John E. Conery, and Charles G. Fitzgerald, Judges.

**AFFIRMED IN PART; AMENDED IN PART AND RENDERED.**
**REMANDED.**

**Paul A. Eckert**
**Sidney W. Degan, III**
**Degan, Blanchard & Nash**
**5555 Hilton Avenue, Suite 620**
**Baton Rouge, Louisiana  70808**
**(225) 610-1110**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Prime Insurance Company**

**Randall A. Smith**
**J. Geoffrey Ormsby**
**Dylan T. Leach**
**Smith & Fawer, L.L.C.**
**201 St. Charles Avenue, Suite 3702**
**New Orleans, Louisiana  70170**
**(504) 525-2200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Prime Insurance Company**

**Frank X. Neuner, Jr.**
**Jennifer M. Ardoin**
**Katelyn E. Bayhi**
**NeunerPate**
**One Petroleum Center**
**1001 West Pinhook Road, Suite 200**
**Lafayette, Louisiana 70503**
**(337) 237-7000**
**APPELLATE COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Terry Graham Trucking, Inc.**
**Elvis Thompson**

**Matthew Green**
**Dill Law Firm**
**P.O. Box 3324**
**Lafayette, Louisiana 70502**
**(337) 261-1408**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Terry Graham Trucking, Inc.**
**Elvis Thompson**

**Justin T. Morales**
**Todd A. Townsley**
**David H. Hanchey**
**The Townsley Law Firm**
**3102 Enterprise Boulevard**
**Lake Charles, Louisiana  70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Teresa Jeffries**

**Thomas H. Huval**
**Jones Fussell, LLP**
**Post Office Box 1810**
**Covington, Louisiana  70434**
**(985) 892-4801**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Financial Indemnity Company**

**John M. Welborn, III**
**Attorney at Law**
**508 North Pine Street**
**DeRidder, Louisiana  70634**
**(337) 462-1200**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
      **Tracey Day on behalf of Briley Day**
      **Tracey Day on behalf of Brooklyn Day**
      **Bradley Day on behalf of Briley Day**
      **Bradley Day on behalf of Brooklyn Day**
      **Tracey Day**
      **Bradley Day**

**J. Craig Jones**
**Jones & Hill**
**131 Hwy 165 South**
**Oakdale, Louisiana  71463**
**(318) 335-1333**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
      **Tracey Day on behalf of Briley Day**
      **Tracey Day on behalf of Brooklyn Day**
      **Bradley Day on behalf of Briley Day**
      **Bradley Day on behalf of Brooklyn Day**
      **Tracey Day**
      **Bradley Day**

**L. Phillip Canova, Jr.**
**Canova and DeLahaye, LLC**
**58156 Court Street**
**Plaquemine, Louisiana  70764-2708**
**(225) 687-8340**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Government Employees Insurance Company**

**Martin Edward Golden**
**Keogh, Cox & Wilson**
**Post Office Box 1151**
**Baton Rouge, Louisiana  70821**
**(225) 383-3796**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Rescare, Inc.**

**James Morgan Passman**
**Attorney at Law**
**201 Johnston Street, Suite 402**
**Alexandria, Louisiana  71301**
**(318) 445-6384**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Government Employees Insurance Company**

**Thomas A. Filo**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, Louisiana  70601**
**(337) 436-6611**
**COUNSEL FOR CROSS-CLAIMANT:**
      **Terry Graham Trucking, Inc.**

**CONERY, Judge.**

The claims of the three Defendants in the case now before us were severed for trial purposes from claims of others in litigation arising out of the same accident. Defendants, Terry Graham Trucking, Inc. (Graham), its driver, Elvis Thompson (Mr. Thompson), and Prime Insurance Company (Prime) (collectively, Defendants) timely appeal the trial court's pre-trial ruling granting the Plaintiff, Theresa Jefferies' (Ms. Jeffries) motion to strike Defendants' two expert witnesses, K. Samer Shamieh, M.D and Stephanie S. Haupt at a pre-trial hearing held immediately prior to the start of a jury trial. A request for a continuance by Defendants was heard and denied on September 27, 2017, and judgment denying the continuance was issued on Thursday, October 3rd before trial on Monday the 7th. Following a jury trial on the merits, the jury returned a verdict of $2,508,853.00 against Defendants in solido, which was reduced to judgment on October 30, 2019.

Following the jury trial and entry of that final judgment, Defendants timely filed a motion for new trial, claiming prejudicial error based on the trial court's ruling on Plaintiff's motion to strike excluding their only two expert witnesses. The trial court denied Defendants' motion for new trial at a hearing held on January 3, 2021.

On February 6, 2020, the trial court signed a final judgment denying Defendants' motion for new trial, and notice of mailing of judgment was issued on March 3, 2020. A motion for suspensive appeal was filed by Defendants on March 16, 2020, with the order granting the appeal signed on April 3, 2020. The appeal bond for the entire amount of the judgment was filed on June 1, 2020. At trial, the Defendants stipulated to liability, and that issue is not before us on appeal. For the following reasons, we affirm in part, amend in part, and remand for further proceedings.

## ASSIGNMENTS OF ERROR

Defendants Graham and Mr. Thompson assert the following assignments of error on appeal:

1. The trial court's Pre-Trial Scheduling Order did not require the exchange or production of expert witness reports. The trial court erred in granting *Plaintiff's Motion to Strike Defendants' Experts* based on the failure to produce and exchange expert witness reports.

2. The trial court's damages award was excessive and a clear abuse of the jury's discretion.

Defendant Prime asserts the following assignments of error on appeal:

1. The District Court erred in striking Defendants' only two (2) experts on the morning of trial.

2. The District Court erred in casting Prime in judgment in excess of the limits of the Policy.

3. The District Court erred in failing to find that the applicable limits of the Policy were $300,000.00 per occurrence, or $100,000.00 for injury or death for one person.

## FACTS AND PROCEDURAL HISTORY

This lawsuit resulted from a rear-end collision on March 31, 2017, wherein Defendant, Mr. Thompson, who was driving an eighteen wheeler owned by Graham and insured by Prime, collided into the rear of a vehicle owned by Bradley Day, which in turn was propelled into Plaintiff/Jeffries vehicle, allegedly causing the injuries to Plaintiff Ms. Jeffries (Ms. Jeffries). Ms. Jeffries filed suit against Prime, Graham, and Thompson on December 15, 2017. On August 23, 2018, Defendants filed a motion to consolidate Ms. Jeffries' suit with the two other lawsuits resulting from the same accident, including a suit filed by Bradley and Tracey Day (hereafter "the Day case.")[1] Financial Indemnity Company (Financial), Ms. Jeffries' collision

---

[1] The Days filed suit individually and on behalf of their minor children Brooklyn and Briley Day. *See Bradley Day, et al. v. Elvis Dean Thompson, et al.*, bearing 14th Judicial District

insurer, filed suit against Defendants to recover the amount paid for property damage to her vehicle. The trial court signed an order granting Defendants' motion to consolidate on September 4, 2018.

A jury trial was fixed for October 7, 2019, and the trial court signed its Pre-Trial Order on February 5, 2019, setting various deadlines, including a July 7, 2019 deadline for exchange of expert witness lists. The Pre-Trial Order stated in pertinent part, "Each party shall furnish to all other parties, in writing, **a list of all expert witnesses** with addresses and their expertise with a duplicate copy thereof to be filed with the Clerk of Court three (3) months before trial." (Emphasis added.)

The Pre-Trial Order did not specifically provide for either the production or exchange of expert reports in accordance with La.Code Civ.P. art. 1425(B) and (C).[2]

---

Court Docket Number 2017-4574. The cases were consolidated, but problems with scheduling during discovery caused the Days to file a motion to sever, which was heard by the trial court on September 27, 2019 and granted on October 3, 2019, shortly before Ms. Jeffries' trial on October 7, 2019. Financial Indemnity Company, as Ms. Jeffries' automobile liability insurer, entered into a joint stipulation with counsel for Ms. Jeffries and Prime agreeing that if Ms. Jeffries was successful in her lawsuit against Defendants, a judgment would be entered in favor of Financial in the amount of $20,578.73 for property damages paid to Ms. Jeffries based on her auto collision policy with Financial. On appeal, Financial adopted the briefs filed by Ms. Jeffries counsel in their entirety.

[2] Louisiana Code of Civil Procedure Article 1425 provides, in pertinent part:

B. Upon contradictory motion of any party or on the court's own motion, an order may be entered requiring that each party that has retained or specially employed a person to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony provide a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor and the data or other information considered by the witness in forming the opinions. The parties, upon agreement, or if ordered by the court, shall include in the report any or all of the following: exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

C. If the court orders the disclosures of Paragraph B of this Article, they shall be made at the times and in the sequence directed by the court. In the absence of directions from the court or stipulation by the parties, the disclosures ordered pursuant to Paragraph B of this Article shall be made at least ninety days before the trial date or, if the evidence is intended solely to contradict or rebut evidence on the

3

On July 3, 2019, Defendants timely filed their Expert Witness List which included the two expert witnesses at issue in this appeal and described each as follows:

> 1.  **K. Samer Shamieh, M.D**., DISC of Louisiana, 76 Starbrush Circle, Covington, Louisiana 70433, via live testimony or trial deposition, defense medical expert in the field of neurology and neurosurgery to testify regarding medical causation and of the plaintiff's medical damages.
>
> . . . .
>
> 4.  **Stephanie S. Haupt**, Hegwood & Company, LLC, Vocational Rehabilitation Counselor, 2017 Ormond Blvd., Destrehan, Louisiana, 70047, via live testimony or trial deposition, defense expert to testify regarding her vocational assessment.

Shortly before the consolidated cases were scheduled for trial, a motion to sever the Day case was filed on September 11, 2019, by Bradley and Tracey Day. On September 16, 2019, Defendants filed a motion to continue the consolidated trials. A hearing was held on both motions on September 27, 2019. The trial court issued a judgment on October 3, 2019 granting the Days' motion to sever as well as a continuance of the Days' trial date. The trial court denied the Defendants motion to continue Ms. Jeffries' trial date and it proceeded on October 7, 2019.

Defendants' counsel had requested that Plaintiff submit to an IME by Dr. Shamieh as well as an evaluation by its chosen Vocational Rehabilitation Expert, Stephanie Haupt. Plaintiff voluntarily and timely co-operated with both requests without the necessity of a court order. Due to Defendants' late request for IMEs, and through no fault of Plaintiff, Dr. Shamieh's examination was not scheduled by

---

same subject matter identified by another party under Paragraph B of this Article, within thirty days after the disclosure made by the other party. The parties shall supplement these disclosures when required by Article 1428.

4

Defendants and did not take place until September 19, 2019, just seventeen (17) days before trial on October 7. Ms. Haupt's vocational rehabilitation evaluation was not scheduled for and was not conducted until September 4, 2019, just thirty four (34) days before trial. Defense counsel agreed with Plaintiff's counsel to provide copies of the reports of the two experts as soon as they were available. Counsel for Defendants claimed that Dr. Shamieh did not render a report of his evaluation of Ms. Jeffries. Ms. Haupt's report was sent on October 3, 2019, just one business day before trial.

On October 4, 2019, the Friday before trial was to begin on Monday, October 7, 2019, Ms. Jeffries' counsel fax filed a motion to strike Defendants' experts, Dr. Shamieh and Ms. Haupt. Ms. Jeffries' counsel actually sought to strike all of the eight experts initially listed on Defendants' expert witness list, but Dr. Shamieh and Ms. Haupt were the only two experts that Defendants intended to call as witnesses to testify at trial based on Defendants' intention to stipulate to liability.

Ms. Jeffries' counsel argued in the motion to strike Defendants' experts that Defendants had failed to timely produce expert reports, and cited La.Code Civ.P. art. 1465. However, an examination of the record shows that the trial court's Pre-Trial Order did not specifically require the exchange of expert reports. Hence, there had been no motion to compel filed by Ms. Jeffries' counsel seeking an order from the trial court requiring Defendants to produce an expert report for any of the experts listed, though production of the expert reports of Dr. Shamieh and Ms. Haupt was part of Plaintiff's counsel's consent to voluntarily participate in Defendants' requested IMEs by Dr. Shamieh and Ms. Haupt without the necessity of a court order.

A hearing was fixed for the motion to strike on the morning of trial. No witnesses were called. The arguments of counsel were heard. Defendant's counsel

5

argued that Dr. Shamieh had not produced an expert report and that he was informed that Dr. Shamieh did not intend to write a report. Defendants' counsel also argued that a written report was not **specifically required** by the Pre-Trial Order. Ms. Haupt had produced an expert report on Thursday, October 3, 2019, which was transmitted to Plaintiff's counsel that same day. It contained a reservation by Ms. Haupt to modify the report after reviewing the findings and opinion by Dr. Shamieh.

After hearing argument of counsel, the trial court granted Plaintiff's motion to strike, stating:

> It just seems unfair, and I have no other word for it, to not give a report when it's been requested. And for that reason[,] in balancing this out, I am going to strike the testimony of Dr. Shamieh, as well as the vocational rehab expert offered by the defense because her opinion is based on the report that she never received, or is subject to change based on the report she never received.

Defendants attempted to craft a stipulation admitting to liability, which Plaintiff's counsel refused to accept. Defendants did, however, admit liability in their opening statement to the jury, so the only witnesses Defendants intended to call were their two experts, Dr. Shamieh and Ms. Haupt, who would testify as to medical causation and damages for Ms. Jeffries' alleged injuries. The ruling by the trial court obviously left Defendants without any witnesses to call in their case-in-chief to rebut the testimony of the witnesses called by Ms. Jeffries, which included expert witnesses on medical causation and damages in the fields of orthopedic surgery, neurosurgery, vocational rehabilitation and lifecare planning, economics, and psychiatry.

At the close of Plaintiff's case, defense counsel requested a bench conference, which was not recorded. Counsel for Defendants then stated:

**THE COURT:**

All right. Mr. Eckert (Counsel for Defendants)?

**MR. ECKART:**

Yes, Your Honor. As we discussed, due to prior evidentiary rulings by the Court, the Defense is not going to present any witnesses and we will rest.

Defendants did not make an offer of proof outside the presence of the jury as to the testimony of Dr. Shamieh and Ms. Haupt. The record does not indicate that there were any objections by counsel for Defendants to the jury instructions or the jury verdict form. After deliberating, the jury rendered a verdict in favor of Ms. Jeffries and against all Defendants in solido in the amount of $2,508,853.00. The trial court signed a final judgment on October 30, 2019 for that amount, with legal interest from the date of judicial demand until paid. Defendants stated no opposition to the trial court's October 30th final judgment and, again, did not attempt to proffer the testimony of Dr. Shamieh and Ms. Haupt. The notice of judgment was dated November 18, 2019, and a motion to tax costs was filed the same day.

Prime, now represented by new counsel, timely filed a motion for new trial, which was adopted and joined by Graham and Mr. Thompson, who continued to be represented by their original trial counsel.[3] Defendants claimed that they were subject to "unfair prejudice caused by the trial court's decision to strike Defendants' expert witnesses immediately prior to trial." On January 3, 2020, the trial court heard Defendants' motion for new trial and Plaintiff's motion to tax costs. The motion to tax costs is not before this court on appeal.

---

[3] At the hearing prior to trial, counsel for Defendants again discussed the issue of a conflict, which he had previously raised on September 16, 2019, in Defendants' motion for continuance, wherein he disclosed for the first time the possible conflict by his representation of all three Defendants, Graham, Thompson, and Prime. Counsel reiterated that Prime had asserted a coverage defense. Defendants Graham and Thompson were unaware of any coverage issues at the time Defendants' trial counsel was hired to defend all three Defendants by Prime. The trial court was made aware of the possible conflict.

At the hearing on the motion for new trial, no evidence was presented and no proffer of the excluded expert testimony of Dr. Shamieh and Ms. Haupt was made. Defendants simply informed the trial court that their experts were being offered to "refute the testimony of Plaintiff's treating physicians concerning the necessity of surgical intervention in light of Ms. Jeffries' long standing history of back pain and her inability to return to her previous employment." Defense counsel also pointed to the general description of the experts' intended role given on Defendants' expert witness list filed on July 3, 2019.

Further, at the new trial hearing, new counsel for Prime argued:

> And, as you well know, Your Honor, you sat through the trial, this was a case of pre-existing conditions, medical conditions, future lost wages, future medical expenses; things that would have been addressed by Dr. Shamieh and Ms. Haupt.

No detail or summary of the testimony of Prime's experts, Dr. Shamieh and Ms. Haupt, was offered. Counsel for Ms. Jeffries argued that there was no proper proffer of the testimony of Dr. Shamieh and Ms. Haupt by Defendants pursuant to La.Code Civ.P. art. 1636, which states in pertinent part:

> A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.
>
> . . . .
>
> C. In all cases, the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.

Ms. Jeffries' counsel argued that Defendants could not show prejudice based on the exclusion of Dr. Shamieh and Ms. Haupt as witnesses as no evidence was actually proffered with respect to the experts' expected testimony. Ms. Jeffries' counsel also argued that Ms. Jeffries, as the person examined, had made several

requests for the experts' reports in question through counsel pursuant to La.Code Civ.P. art. 1465, which provides, in pertinent part:

> A. If requested by the party whom an order is made under Article 1464 **or by the person examined**, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings, including results of all tests made, diagnoses, and conclusions, together with like reports of all earlier examinations of the same condition. . . . . The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if a physician fails or refuses to make a report the court may exclude his testimony if offered at the trial.

(Emphasis added.) Ms. Jeffries' counsel offered copies of several e-mails received in evidence to support his argument that the reports were properly requested on behalf of Plaintiff, Ms. Jeffries.

After argument of counsel, the trial court immediately ruled on the record and denied the Defendants' motion for a new trial, stating:

**THE COURT:**

> Thank you. All right. This matter comes to the Court on a Motion for New Trial filed by the Defendant, Prime Insurance, and adopted by the other defendants in this case.

> The Court has had an opportunity to review the memorandums in favor, and in opposition, and also to listen to the arguments of counsel. And, after having carefully considered what's been argued, **I don't – do not subscribe[] to the reading of 1465 that's being put forward by the defense. I just don't think it leads to the right result and I don't interpret the statute that way.** So, I just want to make sure it's clear to whoever reviews this after me, that I just don't agree and that does help with me making my ruling.

> I do not see a basis. The Court stands by [its] ruling from the morning of trial and I don't see a basis for granting a Motion for New Trial. So, the Motion for New Trial is denied.

(Emphasis added.)

*Standard of Review - Pre-Trial and Post-Trial Motions*

Louisiana Code of Civil Procedure Article 1551 provides a trial court with vast discretion in pre-trial and post-trial matters, **including issues related to whether witnesses will be allowed to testify at trial**. A trial court's determination of an appropriate penalty for violation of any pre-trial or discovery order is reviewed under the abuse of discretion standard of review. *See Benware v. Means*, 99-1410 (La. 1/19/00), 752 So.2d 841. That standard extends to issues regarding whether a witness will be allowed to testify at trial. *See, e.g., Baker v. Baker*, 09-507 (La.App. 3 Cir. 11/4/09), 27 So.3d 958, *writ denied*, 09-2640 (La. 2/12/10), 27 So.3d 850.

In *Labauve v. Louisiana Medical Mutual Insurance Co.*, 19-848, pp. 6-7 (La.App. 3 Cir. 4/28/21), 318 So.3d 983, 989, *writ granted*, 21-763 (La. 10/5/21), _ So.3d _ (2021 WL 4551226), a recent panel of our court fully explained the abuse of discretion standard, particularly with respect to excluding expert witnesses, and stated:

> The trial court has great discretion in determining who should qualify as an expert and whether expert testimony is admissible, and its decision in regards to expert testimony will not be upset on appeal unless it is clearly erroneous. *Mistich v. Volkswagon of Ger., Inc.*, 95-939 (La. 1/129/96), 666 So.2d 1073; *Massie v. Cenac Towing Co., Inc.*, 00-1596 (La.App. 3 Cir. 4/25/01), 796 So.2d 14, *writ denied*, 01-1511 (La. 8/31/01), 795 So.2d 1213. The abuse of discretion standard is highly deferential, though it is not absolute. [Quoting *Boudreaux v. Bollinger Shipyard*, 15-958, 15-1345, p. 16 (La.App. 4 Cir. 6/22/16), 197 So.3d 761, 771, which held in pertinent part:]
>
>> The abuse-of-discretion standard is highly deferential to the trial judge's determination under consideration. *See LCR-M Ltd. P'ship v. Jim Hotard Prop., L.L.C.,* 13-0483, p.9 (La.App. 4 Cir. 10/9/13), 126 So.3d 668, 675. An abuse of discretion generally results from a conclusion reached capriciously or in an arbitrary manner. *See Tugwell v. Plaquemines Parish Gov't*, 14-0657, p. 5 (La.App.4 Cir. 11/19/14), 154 So.3d 695, 699. "Arbitrary or capricious" means the absence of a rational basis for the action taken. *See A.S. v. D.S.*, 14-1098, p.17 (La.App. 4

Cir. 4/8/15),165 So.3d 247, 257.And a court necessarily abuses its discretion if its ruling is based on an erroneous view of the law. *See Show & Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church*, 14-0843, p.8 (La.App. 4 Cir. 12/17/14), 156 So.3d 1234, 1240.

### *Defendants' Assignments Of Error One – Motion To Strike*

In this case, the Pre-Trial Order of the trial court did not specifically require that the parties exchange expert reports. The Pre-Trial Order did require that experts be designated and that the Expert Witness List be filed three months before trial. Defendants' list of designated experts was timely filed on July 3, 2019. However, Defendants did not schedule an IME with Dr. Shamieh until September 19, 2019, seventeen (17) days before trial. Plaintiff voluntarily co-operated with Defendants' request for an IME by Dr. Shamieh as well as a vocational rehabilitation assessment by Defendants' expert, Stephanie Haupt. Plaintiff filed a motion to strike both experts because, in spite of repeated e-mail requests by Plaintiff's counsel, no expert report from Dr. Shamieh was ever furnished. Ms. Haupt's report was not received until the afternoon of October 3, 2019, just one business day before trial, and was signed subject to revision based on Dr. Shamieh's findings. The trial court heard the motion to strike on the morning of trial and granted Plaintiff's motion to strike both witnesses.

Counsel for Ms. Jeffries stressed that pursuant to La.Code Civ.P. art. 1465, Ms. Jeffries, as the person examined, did request the expert reports in question. In this regard, Article 1465 specifically provides, in pertinent part:

> A.     If requested by the party against whom an order is made under Article 1464 **or by the person examined**, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings, including results of all tests made, diagnosis, and conclusions, together with like reports of all earlier examinations of the same condition. . . . The court on motion may make an order against a party requiring delivery of a

11

> report on such terms as are just, and if a physician fails or refuses to make a report the court may exclude his testimony if offered at the trial.

(Emphasis added.)

Defendants contend that, while La.Code Civ.P. art. 1465 allows the trial court to issue an order requiring a party to deliver an expert report on request of the person examined, Ms. Jeffries did not file a motion to have the court order production of expert reports pursuant to La.Code Civ.P. art. 1465 in advance of trial. Neither did the Pre-Trial Order signed on February 5, 2019, so require. Defendants argue that since there was no order issued by the trial court pursuant to La.Code Civ.P. art. 1465(A), and due to the time constraints with the late examination of Ms. Jeffries, they were unable to secure a report from Dr. Shamieh and the trial judge's ruling was erroneous.

In this case, Plaintiff's counsel co-operated fully and timely with Defendants' request for an IME from Dr. Shamieh and an assessment from Ms. Haupt without the necessity of a court order. Ms. Jeffries attended the appointments as scheduled by Defendants and was not in control of when Defendants would schedule the examinations, or whether the experts would timely send the reports, or whether Defendants would timely receive and transmit the reports to her attorney. However, Ms. Jeffries and her attorney had the reasonable expectation that Defendants would timely furnish the reports, since Ms. Jeffries had co-operated fully in the examinations without the necessity of a motion and court order for the examinations issued pursuant to La.Code Civ.P. art. 1465(A).

Under the undisputed factual circumstances of this case, and applying the law as fully explained in our court's recent ruling in *Labauve*, 318 So.3d 983, we find

the trial court's ruling to strike Defendants' experts was not an abuse of its vast discretion.

***Lack of Proffer By Defendants Of Evaluations of Dr. Shamieh and Ms. Haupt***

At the hearing on the motion for new trial, counsel for Plaintiff, Ms. Jeffries, argued that since Defendants had failed to properly proffer the testimony of Dr. Shamieh and Ms. Haupt, Defendants could not show prejudice by the exclusion of the experts' testimony. Louisiana Code of Civil Procedure Article 1636 provides the basis of and procedure for a "proffer" of excluded evidence, and provides, in pertinent part:

> A.     **When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.**
>
> . . . .
>
> C.     In all cases, the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.

(Emphasis added.)

Defendants have specifically appealed the trial court's ruling on the motion to strike excluding their expert witnesses both at the pre-trial hearing, which occurred on the morning of trial, and at the hearing on their motion for new trial. The transcripts of both hearings have clearly delineated the issues involved leading to the trial court's order granting Plaintiff's motion to strike and denying Defendants' motion for new trial. In *Williams v. Lafayette City-Par. Consol. Gov't*, 11-281, p. 5 (La.App. 3 Cir. 10/5/11), 72 So.3d 1023, 1028, *writ denied*, 11-2473 (La. 2/3/12), 79 So.3d 1027, a panel of this court stated, "[t]he failure to proffer excluded testimony or evidence may be excused if there is sufficient other evidence in the

record to make the **content of the excluded testimony abundantly clear from the face of the record.**" (Emphasis added.) Here we find there is no "sufficient other evidence … to make the content of the excluded testimony abundantly clear[.]" *Id.* at 1028.

In fact, in this case there has been no proffer whatsoever of the testimony of Dr. Shamieh or Ms. Haupt in the record. Instead, the record reflects that at the hearing on Defendants' motion for new trial held on January 3, 2020, some three months after the trial, Dr. Shamieh's testimony still had not been properly proffered. Dr. Shamieh had been listed as a defense witness pursuant to the Pre-Trial Order on July 3, 2019. The trial was set for October 7, 2019. There is no testimony or evidence in the record as to whether Dr. Shamieh actually issued a report. Dr. Shamieh could have been subpoenaed as a defense witness at trial or at the pre-trial hearing on the motion to strike, yet there is no evidence of a subpoena served on him in the record. Moreover, there is no evidence of any attempt by Defendants to depose Dr. Shamieh for trial purposes, obtain a sworn affidavit from him, or present a certified copy of his medical records to properly put forth a proffer that would "**make the content of the excluded testimony 'abundantly clear' from the face of the record**." *Williams*, 72 So.3d at 1028 (emphasis added). *See also Gulf Outlet Marina, Inc. v. Spain*, 02-1589 (La.App. 4 Cir. 6/25/03), 854 So.2d 386, *writ denied*, 03-2075 (La. 11/7/03), 857 So.2d 497.

Further, Defendants did not obtain a report, take Dr. Shamieh's deposition, or obtain an affidavit after the trial for purposes of a proffer at the hearing on the motion for new trial held on **January 3, 2020, some three (3) months after the trial**. Likewise, he was not subpoenaed by Defendants to testify as to his findings and opinion at the hearing on the motion for new trial. *See Williams*, 72 So.3d 1023.

14

A panel of this court in *Romero v. LaGrange*, 19-689 (La.App. 3 Cir. 3/4/20), 297 So.3d 127, *writ denied*, 20-1435 (La. 2/9/21), 310 So.3d 178, summed up the responsibility of a party who seeks to preserve evidence on appeal by making a proffer to the trial court. Keeping in mind the vast discretion accorded to the trial court and the applicable abuse of discretion standard, the panel stated:

> In order for this Court to review evidence deemed inadmissible by the trial court, the party must comply with La. C.C.P. art. 1636 to preserve the evidence. *Tatum v. United Parcel Service, Inc.*, 10-1053 (La.App. 5 Cir. 11/15/11), 79 So.3d 1094, 1104. It is well-settled that error may not be predicated upon a ruling that excludes evidence, unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel. *Id.* at 1105. In those instances, it is incumbent upon the party who contends the evidence was improperly excluded to make a proffer; and if the party fails to do so, then that party cannot contend such exclusion was erroneous. *Id.* Without a proffer, an appellate court cannot ascertain the nature of the excluded evidence. *Abadie v. Metro. Life Ins. Co.*, 00-344 (La.App. 5 Cir. 3/28/01), 784 So.2d 46, 86, *writ denied*, 01-1735 (La. 12/14/01), 804 So.2d 644, citing *McLean v. Hunter*, 495 So.2d 1298, 1305 (La.1986).

*Id.* at 134 (quoting *McMillion v. E. Jefferson Gen. Hosp.*, 15-578 (La.App. 5 Cir. 5/26/16), 193 So.3d 448, *writ denied*, 16-1192 (La. 10/10/16), 207 So.3d 405).

In *Lavespere v. Lavespere*, 07-2171, pp. 8-9 (La.App. 1 Cir. 5/2/08), 991 So.2d 81, 86, the appellate court found that "Mr. Lavespere made no effort to proffer the evidence he claims was excluded by the trial [court], no motion for new trial was filed, and there is no indication either in the record or brief submitted to this court on appeal as to the nature or substance of his evidence." The panel further explained that absent a proper proffer, a "party cannot complain that the exclusion of the testimony was error." *Id.*

Likewise, in the case of *Yokum v. Funky 544 Rhythm & Blues Café*, 16-1142 (La.App. 4 Cir. 5/23/18), 248 So.3d 723, the trial court gave the plaintiff the opportunity to proffer the excluded testimony. Instead, the plaintiff's counsel simply

made a general statement to the trial court that the excluded witness "'would have said that Funky 544 was a nuisance and confirmed what Mr. Yokum and Ms. Anderson say and **contradicted what the defense witnesses say**[.']" *Id.* at 744 (emphasis added). The fourth circuit found the statement made by defense counsel did not fulfill the requirements of La.Code Civ.P. art. 1636, as it failed to set forth the "nature of the evidence[,]" once again citing *Williams*, 72 So.3d at 1028. *Id.*

At oral argument in this appeal, counsel for Graham and Mr. Thompson urged the application of the recent fourth circuit case of *Torregano v. Cohen*, 21-0005 (La.App. 4 Cir. 5/19/21), 319 So.3d 401, *writ denied*, 21-865 (La. 10/12/21), _ So.3d _ (2021 WL 4739383). In *Torregano*, the trial court granted the motion to strike filed by Mr. Torregano, excluding the testimony of the defendant's two non-party witnesses for their failure to either attend or answer questions at properly scheduled depositions set by counsel for Mr. Torregano. *Id.* The appellate court found the trial court had committed legal error by striking the testimony of the two non-party witnesses. The panel explained, however, that Defendant Cohen was not to blame for and had no control over the actions of the two non-parties, and that, by granting the motion to strike, "the trial court deprived Mr. Cohen of the substantial right to defend himself against the Torreganos' claims." *Torregano*, 319 So.3d at 404.

Here, there was no attempt by Defendants to proffer any documents or evidence whatsoever outlining the testimony of either Dr. Shamieh or Ms. Haupt.[4]

---

[4] New counsel for Graham and Mr. Thompson claims that Ms. Haupt's report was "attached" to Defendant's "Reply Memorandum in Support of Motion for New Trial." However, the "report" was not proffered as evidence at the new trial hearing. *See Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88 (wherein the supreme court explained that "[e]vidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal."). *See also Burley v. New York Life Ins. Co.*, 15-263 (La.App. 3 Cir. 11/25/15), 179 So.3d 922. And, as noted by the trial judge, the "report" was subject to revision based on receipt of Dr. Shamieh's findings.

Defendants relied on only their attorney's general statements to support their "proffer" of the anticipated testimony of Dr. Shamieh and Ms. Haupt. As stated in *Williams*, 72 So.3d at 1028:

> On at least two occasions, our courts have found that an attorney's statement as to what a witness would say does not meet the requirements of La.Code Civ.P. art. 1636, insofar as it calls for "a statement setting forth the nature of the evidence." *See Holt v. Bethany Land Co.,* 36,888 (La.App. 2 Cir. 4/9/03), 843 So.2d 606; *McHale v. Schwegmann Bros. Giant Super Mkts., Inc.,* 97-788 (La.App. 5 Cir. 11/23/98), 722 So.2d 328.

Given the clarity of the record and the failure by Defendants to subpoena Dr. Shamieh and Ms. Haupt, or to properly proffer Dr. Shamieh's and Ms. Haupt's testimony before or during trial, as well as their failure to offer that testimony through deposition, affidavit, or live testimony at the post-trial hearing on the motion for new trial, we hereby affirm the trial court's rulings striking the testimony of Dr. Shamieh and Ms. Haupt and denying the motion for new trial.

### *Defendants Graham and Mr. Thompson - Assignment of Error Two*

Defendants Graham and Mr. Thompson, now represented by separate counsel from Prime, assert that the trial court's damages award was excessive and a clear abuse of the jury's discretion.

In the case of *Etienne v. C. Thompson Automotive, Inc.*, 18-725, p. 3 (La.App. 3 Cir. 3/13/19), 269 So.3d 1088, 1091 (quoting *Bouquet v. Wal-Mart Stores, Inc.,* 08-0309, pp. 4-5 (La. 4/4/08), 979 So.2d 456, 458-59), a panel of this circuit addressed appellate review of general damages awarded under the provisions of La.Civ.Code art. 2324.1,[5] as follows:

> General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty. *Duncan v. Kansas*

---

[5] Louisiana Civil Code Article 2324.1 provides, "In assessment of damages in cases of offences, quasi offences, and quasi contracts, much discretion must be left to the judge or jury."

*City So. Ry. Co.* 00-0066, p. 13 (La.10/30/00), 773 So.2d 670, 682; *Boswell v. Roy O. Martin Lumber Co.*, 363 So.2d 506, 507 (La.1978); *Anderson v. Welding Testing Lab., Inc.*, 304 So.2d 351, 352 (La.1974).

The standard of review applicable to a general damages award is the abuse of discretion standard. *Anderson,* 304 So.2d at 353; *Coco v. Winston Indus., Inc.,* 341 So.2d 332, 335 (La.1976). The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. *Duncan*, 00-0066, p. 13, 773 So.2d at 682 ("Vast discretion is accorded the trier of fact in fixing general damage awards."); *Anderson v. New Orleans Pub. Serv., Inc.,* 583 So.2d 829, 834 (La.1991). An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340 (La.1993); *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact. *Duncan,* 00-0066, p. 13, 773 So.2d at 682-83; *Youn*, 623 So.2d at 1260. To determine whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case. *Theriot,* 625 So.2d at 1340; *Youn*, 623 So.2d at 1261.

The jury in this case returned a verdict for all damages on a special verdict form as follows:

2. **What sum of money, if any, would compensate Plaintiff, Theresa Jeffries, for the following?**

   *Do NOT make any actual monetary reduction in the figure you reach, if any. The Court will make the appropriate reductions after your return your verdict.*

| | | |
|---|---|---|
| a. | **Past medical expenses** | **$112,272.00** |
| b. | **Future medical expenses** | **$658,407.00** |
| c. | **Past lost wages** | **$78,000.00** |
| d. | **Future lost wages** | **$113,788.00** |
| e. | **Past physical pain & suffering** | **$150,000.00** |
| f. | **Future physical pain & suffering** | **$622,003.00** |
| g. | **Past mental anguish** | **$60,413.00** |
| h. | **Future mental anguish** | **$229,640.00** |
| i. | **Past loss of enjoyment of life** | **$75,000.00** |
| j. | **Future loss of enjoyment of life** | **$388,752.00** |
| k. | **Property damage** | **$20,578.00** |
| | **Total** | **$2,508,853.00** |

Defendants argue that the award was extremely high and an abuse of discretion. We agree in part that the award is high.[6]

Having found that Defendants failed to properly proffer the excluded testimony of their experts, Dr. Shamieh and Ms. Haupt, the record before us is silent as to what their testimony would have been at trial and we can only speculate as to what effect, if any, that testimony would have had on the jury's verdict. Again, Defendants are unable to show prejudice. Therefore, there is nothing in the record to contradict the testimony of Plaintiff and the expert witnesses and evidence Plaintiff offered as to her damages. Though the general damages arguably may be high for injuries of this type, Defendants are unable to show that the jury's award was an abuse of its much discretion. *See Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So.2d 70. We are therefore constrained to affirm that award.

---

[6] Arguably the "high" general damages award may be attributable to the itemized general damage categories on the jury verdict form. In *Stutes v. Greenwood Motor Lines, Inc.*, 17-52 (La.App. 3 Cir. 11/22/17), 234 So.3d 75, 88-89, the concurrence in that case stated:

> I am of the view that the itemization of general damage categories on the verdict form added substantially to the likelihood that the jury would award separate general damages for, essentially, the same injury, and, in my view, contributed to the high verdict. However, since there was no objection to the jury verdict form, a finding of manifest error cannot be supported on that basis. *Royer v. State Dep't of Transp. & Dev.*, 16-534 (La. App. 3 Cir. 1/11/17), 210 So.3d 910, 923, *writ denied*, 17-288 (La. 4/24/17), 221 So.3d 69; *Kennedy v. Davis*, 17-218 (La. App. 3 Cir 10/4/17), 229 So.3d 558.

***Prime's Assignments Of Error Two And Three – Prime's Insurance Policy Limitations***

Waiver of Coverage Defenses

In this case, Prime's counsel answered the original lawsuit on behalf of its insured, Graham and, by separate pleading, also answered on behalf of Graham's driver, Mr. Thompson. By the answers, Prime pled the limitations, terms, and conditions of the policy "as if copied in extenso." That policy was introduced into evidence.

However, Defendants' counsel had continued to represent all three defendants until days before the trial was to begin. No reservation of rights letter was proven to have been received by either Graham or its driver, Mr. Thompson. In light of that purported omission, Plaintiff alleged that, under the applicable law, Prime waived any policy defenses or coverage issues.

Prime filed a Motion to Continue on September 16, 2019, which was heard on September 29, 2019. Prime sought to introduce into evidence an unsigned letter dated May 3, 2017 addressed to Graham, allegedly reserving its rights to plead a coverage defense. Prime alleged that since Mr. Thompson was an "unscheduled driver," its policy either did not provide coverage or alternatively provided only a single limit of $300,000 for all claims, including those of other plaintiffs. That limit would be further "depleted" by all defense costs and attorney fees as the policy provides, in pertinent part:

> COMMERCIAL BUSINESS AUTO INSURANCE POLICY
> . . . .
> Claim Expenses reduce the available Limits of Liability stated on the Declarations . . . .
>
> SECTION IV – LIMITS OF LIABILITY
> . . . .

B.  Each Accident Limit of Liability listed on the Declarations or any **Endorsement is the most we will pay for any combination of Damages and/or Claim Expenses because of all Bodily Injury and Property Damage arising out of any one Accident. Claim Expenses reduce the available Limits of Liability**.

SECTION VIII – DEFINITIONS

. . . .

I.  "Claim Expenses" mean:

1.  All fees, costs, and expenses charged by any lawyer or other service provider designated by the Insurer to represent the Insured; and

2.  All other fees, costs, and expenses, including the Insurer's own internal fees, costs, and expenses, or those of an affiliate, resulting from the investigation, adjustment, defense, and appeal of a Claim, as authorized by the Company.

The determination of the Insurer as to the reasonableness of Claim Expenses shall be conclusive on the Insured.  All Claim Expenses reduce the available Limits of Liability.

(Emphasis added.)

Ms. Jeffries' counsel argued that jurisprudence on this issue requires that such a "reservation of rights" must be promptly made before insurance counsel enters representation of the insureds or all coverage defenses are waived.  The supreme court addressed an insurer's waiver of coverage defenses in *Steptore v. Masco Constr. Co., Inc.*, 93-2064 (La. 8/18/94), 643 So.2d 1213.  The insurer in *Steptore*, Ocean Marine, initially assumed the defense of Masco, its insured.  Six months into the representation, however, Ocean Marine denied coverage based upon a purported violation of a navigation warranty contained within the policy.  Defense counsel withdrew from its representation of Masco but remained in the litigation as counsel for Ocean Marine.

21

On review, the supreme court determined that Ocean Marine's right to assert a coverage defense was waived by its assumption and continuation of its defense of Ocean Marine despite facts that would otherwise indicate a right to deny coverage. *Steptore*, 643 So.2d 1213. The supreme court explained that:

> Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege. Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered.
>
> It is well established that an insurer is charged with knowledge of the contents of its own policy. In addition, notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered.
>
> Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest. Accordingly, when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense.

*Id.* at 1216 (citations omitted).

In *Rivers v. Daigle*, 16-805 (La.App. 3 Cir. 2/1/17), 210 So.3d 815, a panel of this court cited *Steptore* in finding that Allstate, the insurer in the case before it, had similarly waived its claim of coverage in a case involving its insureds, the Allemands. The panel noted that Allstate had hired an attorney to represent its insured, Mrs. Allemand, the mother of the alleged minor tortfeasor in that case. Counsel hired by Allstate, in turn, answered on behalf of itself, Mrs. Allemand, and

22

the minor. Although Allstate notified Mrs. Allemand of its representation of her, it specifically "did not seek a non-waiver agreement or assert any coverage defenses." *Id.* at 819. The following month, however, Allstate discovered a potential coverage defense and notified Mrs. Allemand of such by sending reservation of rights letters to Mrs. Allemand and her minor daughter. It thereafter "split the defense between it and the Allemands" and hired separate counsel for each. *Id.*

Despite Allstate's decision to split its defense prior to trial, the plaintiffs in *Rivers* argued that the insurer had waived its coverage defense. The panel agreed, finding that "Allstate had all the information it needed to determine a coverage defense existed upon being served with and reviewing the Rivers' petitions. At the least, Allstate had 'knowledge of facts indicating noncoverage under its policy.'" *Rivers*, 210 So.3d at 819-20 (quoting, in part, *Steptore*, 643 So.2d at 1216). In light of the available facts, Allstate's attorney or adjuster could have inquired into the potential defense to clarify that information "before filing an answer[.]" *Id.* at 820. Accordingly, when Allstate proceeded to file an answer and defend both Mrs. Allemand and the minor, Allstate waived its coverage defense.

Just days before trial in this case, Prime filed a motion to continue and cited its "conflict." As in *Steptore* and *Rivers*, however, the attorney hired by Prime, answered for and defended all three Defendants until just days before the trial. The trial judge in this case granted the motion to continue the consolidated Day case for other reasons and severed that case from that of Ms. Jeffries. It denied the motion to continue this case. Plaintiff then filed a motion to strike Defendants' experts, which was heard on the morning of trial, October 7, 2019.

At that hearing, Defendants' counsel for all three Defendants again argued that he had a conflict in his representation of all three Defendants due to alleged

23

insurance policy limitations and exclusions. Prime sought to exclude coverage to Graham and Mr. Thompson because it alleged that Mr. Thompson was an "unscheduled driver" not covered by the policy. Counsel for Ms. Jeffries argued that it was too late to urge such a conflict, and that under existing case law, Prime had waived all policy defenses by its actions defending Prime and its insured Graham as well as its insured driver, Mr. Thompson. The trial court issued a ruling finding, "no conflict. If there was a conflict I find that it's been waived by the insurance company. Okay. . . . . And I will make a decision once the jury decides as to what the amount is."

At the trial on the merits, the jury rendered a verdict in favor of Plaintiff Jeffries and against Prime, Graham, and Mr. Thompson in the total amount of $2,508,853.00. Plaintiff submitted a proposed judgment to the trial court, to which no objection was filed by Defendants' counsel even though the judgment far exceeded Prime's policy limits of one million ($1,000,000.00) dollars per occurrence. Defendants likewise never requested that the trial court set a hearing on the amount of coverage, in spite of her stated intention to do so.

Reliance on an exclusion or limitations on coverage are affirmative defenses which are waived if not specifically plead. *See* La.Code Civ.P. art. 1005. *See also Davis v. Nola Home Constr., L.L.C.*, 16-1274 (La.App. 4 Cir. 6/14/17), 222 So.3d 833; *Royal Cloud Nine, L.L.C. v. Lafayette Ins. Co.*, 08-34 (La.App. 4 Cir. 6/11/08), 987 So.2d 355, *writs denied*, 08-1551, 08-1568 (La. 10/10/08), 993 So.2d 1286, 1287; *Dixie Sav. & Loan Assoc. v. Pitre*, 99-154 (La.App. 5 Cir. 7/27/99), 751 So.2d 911, *writ denied*, 99-2867 (La. 12/10/99), 751 So.2d 855; *Pendleton v. Smith*, 95-1805 (La.App. 4 Cir. 5/8/96), 674 So.2d 434, *writ denied*, 96-1425 (La. 9/13/96), 679 So.2d 107; *Nippert v. Baton Rouge Railcar Servs.*, 526 So.2d 824 (La.App. 1

24

Cir.), *writs denied*, 530 So.2d 84, 87, 91 (La.1988); and *Tudury v. Coop. Cab Co., Inc.*, 265 So.2d 307 (La.App. 4 Cir. 1972).

As a panel of our court noted in *Rivers*, 210 So.3d at 817, "an insurer's failure to obtain a reservation of rights to contest coverage before assuming the defense of a claim can result in the waiver of the right to contest coverage if the insurer assumes the defense having knowledge of facts indicating a coverage defense may exist." Such a "[w]aiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered." *Arceneaux v. Amstar Corp.*, 10-2329, p. 18 (La. 7/1/11), 66 So.3d 438, 451 (quoting *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1375).

For whatever reason in this case, Prime hired a single attorney for all three defendants. No waiver of rights letter was proven to have been received by the insured Graham or sent to or received by Mr. Thompson. Absent any such waiver, the insureds were led to believe the insurer had relinquished its coverage defenses as the insurer continued to defend the insureds while having knowledge of facts indicating noncoverage. *See, e.g.*, *Arceneaux*, 66 So.3d 438. Based on the uncontradicted facts in this case, we find Prime's coverage defenses have been waived. *See Steptore*, 643 So.2d 1213; *Rivers*, 210 So.3d 815.

25

Waiver of Policy Limits under the "Good Faith and Fair Dealing Statute"

Prime urges that the trial court committed legal error when it signed a judgment against Prime holding Prime jointly and severally liable for the entirety of the judgment in excess of $2,508,853.00, which is in excess of its determined policy limits of one million ($1,000,000.00) dollars for all claims, less defense costs. Prime argues that its exposure cannot be greater than its policy limits.

Mr. Jeffries argues that Prime's coverage limits only apply when the insurer is found to have dealt in good faith with its insured. *See* La.R.S. 22:1973. *See also Herron v. State Farm Mut. Auto. Ins. Co.*, 19-236 (La.App. 3 Cir. 12/30/19), 288 So.3d 859, *writ denied*, 20-0191 (La. 4/27/20), 295 So.3d 948. On this point, the fifth circuit explained in *Larios v. Martinez*, 17-514, p. 9 (La.App. 5 Cir. 2/21/18), 239 So.3d 1041, 1047, that "Louisiana jurisprudence recognizes that a liability insurer may be liable for a judgment against its insured in excess of the policy limits, when the insurer failed to deal in good faith with a claim against its insured."

The question still to be decided is whether the one million ($1,000,000.00) dollar policy limits on Prime's policy issued to Graham should apply, or whether the "waiver of coverage defenses" also applies to a **waiver of policy limits**. Prime alternatively contends that the policy is in evidence and its "depleting" one million ($1,000,000.00) dollar limit applies. The "coverage defense" it waived was whether and to what extent Mr. Thompson's actions as an "unscheduled driver" "were covered by Graham's policy."

In this case, the trial court charged the jury on damages with no reservation of rights placed on the record by Defendants' counsel, then representing all three Defendants. The jury returned a verdict and, again, defense counsel made no objection as to Prime's limits. Neither did Defendants' counsel make any argument

that Prime could only be responsible for a total of one million ($1,000,000.00) dollars, less claims and defense costs. In fact, Defendants' attorney actually approved the final judgment without any objection.

After the trial, Prime hired separate counsel, who filed a motion for new trial, citing error in the trial judge's pre-trial striking of Defendants' experts. Prime's counsel also argued that Prime's policy limits of one million ($1,000,000.00) dollars less defense costs must still be enforced. Indeed, in its pre-trial ruling discussed infra, the trial judge stated: "And I will make a decision once the jury decides as to what the amount is."

The record shows that prior to the hearing on Prime's motion for new trial, Graham and Mr. Thompson, represented by separate counsel, filed a cross-claim against Prime seeking to hold Prime responsible for all damages it may owe. There is nothing in the record before this court showing whether that cross-claim was ever presented for hearing in this case, or whether a trial court decision on that cross-claim was ever entered.

In fact, there was no mention of the cross-claim at the hearing on the motion for new trial except for an acknowledgement that Attorney Thomas Filo made an appearance and advised the court that he had filed such a claim. The original trial counsel for Graham and Mr. Thompson was still representing those defendants at the hearing of the new trial motion.

Reference to the actual pleading in the record indicates that Prime's insured, Graham Trucking Company, Inc. filed its cross-claim alleging that Prime had acted in bad faith in defending Plaintiff's suit against Graham without a reservation of rights to argue a coverage defense. Louisiana Revised Statutes 22:1973 (emphasis added) provides, in pertinent part:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties **shall be liable for any damages sustained as a result of the breach.**

. . . .

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

However, there is nothing in the record to show that the cross-claim has been adjudicated and that issue is not before us on appeal. Hence, we find that issue has not been properly presented for our decision, and we must remand that issue to the trial court for a separate hearing and eventual decision.

Determination of Limits of Liability Under Terms of Policy

Similarly, by its third assignment of error, Prime asks that this court decide the amount of coverage actually owed to Plaintiff for damages for the accident at issue based on the terms of its policy issued to Graham. The trial court judgments cast Prime in solido with Graham and Mr. Thompson for $2,508,853.00, the total amount of damages awarded by the jury. Prime claims that it's stated policy limits are one million ($1,000,000.00) dollars per accident for all claims caused by the fault of Graham and its driver, Mr. Thompson, less its defense costs. Plaintiff claims that since Prime did not issue a valid waiver of rights letter to Graham and Mr. Thompson, all policy defenses, including the amount of available insurance, is waived.

Again, the trial court did not rule on this issue. Graham and Mr. Thompson's cross-claim against Prime was not filed until after the trial had been concluded and

there is no judgment by the trial court in the record as to the amount of coverage, or the "bad faith" issues raised by Graham, post-trial, in its cross-claim against Prime. Those issues are not properly before this court on appeal, and we remand the issue of the amount of insurance coverage and whether Prime waived its coverage defenses as to any damages in excess of its admitted one million ($1,000,000.00) dollar coverage less claims expenses. We amend the judgment against Prime to one million ($1,000,000.00) dollars in solido with Graham and Mr. Thompson, less defense costs to be determined by the trial court on remand. We further remand the claims of Graham and Mr. Thompson that Prime violated the "Good Faith and Fair Dealing Statute," La.R.S. 22:1973, and should be liable for additional damages and attorney fees pursuant to that statute, to the trial court for adjudication and decision.

## CONCLUSION

We hereby affirm the judgment of the trial court in its entirety as to Defendants Terry Graham Trucking, Inc. and Elvis Thompson.

We amend the judgment of the trial court and enter judgment in favor of Plaintiff Teresa Jeffries against Prime Insurance Company for one million ($1,000,000.00) dollar coverage limits, reserving to Terry Graham Trucking, Inc. and Elvis Thompson all rights to pursue the cross-claim against Prime, and reserving all rights to Plaintiff Jeffries to present her claim to the trial court that Prime has also waived its right to plead limitations on its policy limits of one million ($1,000,000.00) dollars less defense costs.

All costs of this appeal are assessed to Prime Insurance Company.

**AFFIRMED IN PART; AMENDED IN PART AND RENDERED. REMANDED.**

29